**KENNER LAW FIRM, P.C.**
David E. Kenner, SBN 41425
Brett A. Greenfield, SBN 217343
16000 Ventura Boulevard, PH 1208
Encino, CA 91364
818 995 1195
818 475 5369 – fax

Attorney for Plaintiff Josef F. Boehm

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| Josef Franz Boehm, | ) |
| | ) Statement of Facts |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| United States of America | ) |
| | ) CASE NO.: A04-003-01-CR(JWS) |
| Defendants. | ) |

### I.  FACTUAL BACKGROUND

Based on the factual stipulation contained in the plea agreement, sometime beginning in late 2001 and continuing until December of 2003 the Defendant Joseph Boehm (hereinafter referred to as Defendant) became involved with a number of individuals who were using and sharing crack cocaine with a group of females under the age of twenty-one. The group also included some females who were over the age of twenty-one.

The Defendant, although a successful businessman, was himself a

1

**Statement of Facts**

cocaine addict. Bambie Tyree, one of the co-conspirators, introduced Defendant to the other conspirators who were the actual suppliers of cocaine base to the Defendant. The Defendant, upon receipt of the cocaine base, then delivered it to others by "sharing" the base with them, and in fact, using the base with others at his own home (forfeited to the Government as part of the plea) and other locations in Anchorage including local hotels.

In addition to using and sharing the cocaine base with the females, most of whom were underage, the Defendant and the other conspirators engaged in sexual activities with them as well. The parties agreed in the plea agreement that Defendant and the others were well aware that the young ladies were in fact underage.

It was also undisputed that the Defendant himself was suffering from a major crack cocaine addiction. Defendant started using powder cocaine as early as the 1980's. Defendant began use of the cocaine base in the early 1990's. According to professionals who examined him for competence in the underlying case, Defendant had a long term history of problematic use of crack cocaine. Mr. Boehm was arrested on December 17, 2003 and has been incarcerated since that date.

Defendant had a number of lawyers representing him during the pendency of his Federal criminal case. During the course of that matter, prior to the entry of his guilty plea, Defendant's counsel became concerned about his mental competency to stand trial. To that end, counsel caused to be filed a motion entitled "Defendant Joseph Boehm's Motion to Determine Mental Competency to Stand Trial under 18 U.S.C. §4241," on or about July 26, 2004.

Among the allegations made in that motion and supporting affidavits were;

1) There is reasonable cause to believe that the Defendant's mental condition may so impact his ability to understand the actual nature of the evidence and/or allegations against him, and/or assist properly in his defense (motion page 2).

2) Mr. Boehm exhibits multiple examples of what appear to be fixed delusions. (Jacobson affidavit).

3) Mr. Boehm believed there were three Bambie Tyrees, two of whom were clones (Weidner-Butler affidavit).

4) Mr. Boehm was convinced his daughter was missing or dead and had been kidnaped or murdered by pornographers and that she had been replaced by a substitute daughter (Weidner-Butler affidavit).

5) That he is being victimized in this case by a terrorist cell (Weidner-Butler affidavit).

The motion further indicated that counsel had serious concerns about the sanity of Defendant from their earliest appearance in the case, and had in fact, requested a psychiatric evaluation of Defendant from Magistrate Branson at the initial stages of the case. Magistrate Branson declined th request to transfer for the mental examination, but counsel's fears persisted.

The Defendant's counsel had several expert reports prepared and apparently submitted for a hearing to determine competency for trial

3

**Statement of Facts**

held on or about November 17, 2004.[1]

An impressive group of mental health professionals examined Defendant Boehm. Their conclusions were remarkably consistent. Defendant Boehm suffered from organic brain damage and his ability to function and comprehend were severely impaired.

**A. GARY A. JACOBSON, M.D.**

Dr. Jacobson prepared a report dated November 11, 2004, and later testified at the sentencing hearing. Dr. Jacobson's report stated in pertinent part;

1) Defendant Boehm has the disease of substance dependance.

2) Based on a combination of factors including episodes of head trauma, normal aging, hypertension, a 30 year history of alcohol abuse, a 20 year history of cocaine abuse, a 7 year history of crack cocaine abuse, it is ". . . medically probable that Mr. Boehm had experienced some degree of brain damage before and/or during that period . . ."

3) "He demonstrated an overall paranoid ideation about many events in the past. <u>He demonstrated an unusual pattern of thinking with loose associations and tangential thinking</u>. He repeatedly described possible disturbances in the contents of his beliefs to include descriptions of others consistent with fixed delusions (emphasis ours).

---

[1] Inexplicably although counsel submitted reports, the only witness actually called at the competency hearing was the Government expert Dr. Linda Hope.

4

**Statement of Facts**

Dr. Jacobson reached the following conclusion;

> "Mr. Boehm is at high risk to have experienced some type of permanent brain damage related to the events preceding and subsequent to his heavy use of crack cocaine."

**B.   BRUCE N. SMITH, PH.D.**

Dr. Smith prepared a report based on examination conducted on July 27 and July 31, 2004. Dr. Smith reviewed various reports, including those of the Government experts. While he did not make a definitive determination on competency he did make the following findings;

> "Mr. Boehm does show evidence of clinical depression and a delusional disorder which limits his ability to think in consensual reality based terms . . .
>
> A common characteristic of individuals with delusional disorder is the apparent normality of their behavior and appearance when their delusional ideas are not being discussed or acted upon . . . Mr. Boehm may have other mitigating factors such as cognitive disorder as a result of his cocaine addiction . . . This appears to go beyond dysthymia and may have organic implications.

**C.   ARTHUR KOWELL, M.D.**

5

**Statement of Facts**

Dr. Kowell performed objective neurological tests after the Court declared Defendant Boehm "competent" to stand trial.  In the Court order finding Defendant Boehm competent, the Court ordered the objective testing indicating an uncertainty with regard to the competency issue.   Dr. Kowell's report concerning the CT scan of the brain, the MRI the FDG Pet Scan, the Cartoid duplex ultrasound and the Caretec Spect showed as its conclusion the following;

> "The results . . . are compatible with cerebral ischemic primarily within the distribution of the middle cerebral arteier bilaterally affecting the frontoparietial regions and anterior deep periventricular white matter bilaterally . . . the ischemic changes of the brain discussed about could result in a dysfunction of the frontoparietial regions bilaterally and deep periventricular white matter bilaterally."

Dr. Kowell also testified at sentencing where he elaborated on the meaning of his report.   Dr. Kowell testified at the sentencing that his objective findings would not support a global diagnosis of dementia, but would certainly be consistent with a finding of sub-cortical dementia.  This dementia is best defined as a frontal lobe dementia.

Dr. Kowell's more significant finding was that Defendant Boehm exhibited evidence of a vascular disease affecting his brain and consistent with cerebral ischemia.  This ischemia results in a lesser blood flow to the brain and results in measurable dysfunction.

**D.   DEBORAH ELY BUDDING, Ph.D.**

Dr. Budding, a psychologist specializing in both clinical and neuropsychology and psychotherapy provided an evaluation of Defendant Boehm on November 11, 2004 and later testified at the sentencing.

Immediately impressing Dr. Budding was the fact that Defendant Boehm's initial encoding of information was variable and limited. Dr. Budding concluded from this that "the amount of information he is able to take in at any one time can vary from moment to moment . . . people with limited and variable initial encoding can often experience . . . difficulties based on a tendency to miss important parts of conversations and thus acting on incomplete information."

This observation coupled with the results of her extensive testing led Dr. Budding to reach the following conclusions;

1) Boehm presents overall diffuse and rather subtle deficits and presents with symptoms consistent with a cognitive disorder NOS.

2) Boehm's executive function was in particular poor, especially in the area of planning and problem solving as well as working memory.

3) While able to work well with simple information but encounters significant problems when required to perform multiple tasks or work with abstract information.

These impressions were reinforced over time. Dr. Budding's testimony at the sentencing hearing indicated that there had been no change in her assessment of Mr. Boehm. In her testimony on May 3rd and 4th, Dr. Budding informed the Court that Mr. Boehm was presently

delusional. Moreover, in the past he was floridly delusional and paranoid. Without question she believed that Mr. Boehm has dementia as well as a cognitive disorder NOS related in whole or in part to brain damage.

**E.  JAMES MITTLEBERGER, M.D., FACP**

Dr. Mittleberger, a medical doctor provided a declaration under penalty of perjury on November 12, 2004.

Dr. Mittleberger, who specializes in elder care, was quite clear in his assessment of Defendant Boehm. Dr. Mittleberger said;

> "My first opinion is that Mr. Boehm was significantly cognitively impaired prior to the year 2002 and severely cognitively impaired in the years of 2001-2003. His cognitive capacity was also profoundly diminished at this time by multiple bizarre delusions and paranoia. He remains cognitively impaired . . . on examination he has difficulty maintaining a coherent train of thought on answering a complex question . . . .given that he has been in a very structured environment and regular diet it is likely that there executive functions are permanent."

Dr. Mittleberger's testimony at the sentencing hearing was consistent with his report.

**II.  COMPETENCY HEARING AND AFTERMATH**

As indicated hereinabove a competency hearing was held on November 17, 2004 before the trial Judge. The hearing was sealed, as reflected in the Order dated November 17, 2004. The Order did not fully address Defendant Boehm's mental status but found only;

> "That Defendant Josef Franz Boehm presently is knowledgeable about and has a rationale understanding of the charges against him and the

8

**Statement of Facts**

proceedings required to resolve those charges. Joseph Boehm is competent to stand trial."

The Court heard only the testimony of Dr. Laura Hope, a Government psychologist. However, the Court did receive and review reports from the several defense experts referenced hereinabove. The Court then also issued a minute order reflecting the proceedings.

The minute order reflects the hearing took only one hour to conduct. After finding Defendant competent, the Court then ordered Defendant to be transported for a Cat Scan and similar tests. The Court also ordered a report from an approved expert based on those tests. As dealt with hereinabove, the tests were done and the reports clearly indicated a lack of competence and/or mental deficits on the part of Mr. Boehm. Inexplicably, no further hearing as to his competence was held.[2] Two days after the competency hearing, which had been held at the request of his lawyers, Joseph Boehm signed a 34 page plea agreement.

The agreement called for a plea to two counts and the dismissal of the balance of the Fourth Superseding Indictment. The counts Defendant agreed to plead to were a 18 U.S.C. 371 conspiracy to engage in sexual activities with minors and a 21 U.S.C. 841(a)(1) 846 conspiracy to distribute cocaine. A guideline range was set forth in the plea agreement which suggested a minimum range of 135 months. Despite the fact that counsel merely two days earlier had been

---

[2] It is difficult to understand that a Court could in one breath find a Defendant competent and at the same time in response to reports order tests to verify potential brain damage.

9

**Statement of Facts**

prosecuting a motion brought by them to have the Defendant declared incompetent, and to which they had appended declarations declaring under penalty of perjury their belief he was incompetent, they appended to the plea agreement a declaration proclaiming;

> "As counsel for the Defendant we have discussed with him the terms of this plea agreement, have fully explained the charged to which he is pleadings guilty and the necessary elements, all possible defenses and the consequences of his plea. Based on these discussions, we have no reason to doubt that the Defendant is knowingly and voluntarily entering a plea of guilty. We know of no reason to question his competency to make these decisions. If prior to the imposition of sentence, we become aware of any reason to question Defendant's competency to enter into this plea agreement or to enter a plea of guilty, we will immediately inform the Court."[3]

At the same time they signed this declaration they were also aware that further testing had been ordered by the Court to ascertain whether Defendant was suffering from organic brain damage. Moreover, the certification required that if they came into additional information as to competence prior to the sentencing, they were obligated to bring that to the Court's attention for further consideration. In fact, the reports of the objective testing by Dr. Kowell were received after November 22, 2004, as were follow-up reports by Dr. Budding, Jacobson and Mittleberger and counsel never

---

[3] Also, at the time the attorneys signed these declarations, they possessed report from Dr. Budding and Dr. Mittleberger which indicated that Defendant Boehm did not comprehend or assimilate information. Their certification of competence seems disingenuous at best.

10

**Statement of Facts**

advised the Court of same in the context of competence to plead.[4]

Prior to signing the plea agreement, counsel met with Defendant Boehm to discuss the agreement. At that meeting, despite the predictive guideline range of 135 months plus, counsel indicated to Defendant that he could receive a sentence as low as 60-75 months assuming he could qualify for the safety valve. While counsel believed that their presentation of this potential lesser sentence was presented as a speculative best case scenario, it is recalled by Defendant as probable fact. Based on the unequivocal mental problems suffered by Defendant, such a conflict is easily understandable.

The matter then went to the actual plea hearing before the Court on November 22, 2004. The following incredible plea colloquy occurred at that time;

"COURT: Although I don't have any reason to believe it's true, it's a question I always ask: have you ever been treated for a mental illness?

MR. WEIDNER: May we have a moment, Your Honor?

COURT: Yes.

DEFENDANT BOEHM: I have been evaluated due to these proceedings by . . .

---

[4]Counsel called several doctors at sentencing, but never correlated for the court their findings as to the competence issue, only as to whether Defendant was a leader or organizer in the earlier criminal conduct.

11

**Statement of Facts**

COURT: I am aware you were evaluated by Dr. Hope[5], and we had a proceeding in which I concluded you were competent to stand trial. Other than the examination by Dr. Hope, have you ever been examined with a possibility that you had a mental illness?

MR. WEIDER:  Your Honor, just so it is clear for the record, he has also been examined by our doctors.

THE COURT: Well I realize that . . ."

Thereafter the Court proceeded with the balance of the plea colloquy.  The obvious purpose for making the inquiry is to determine Defendant's mental ability to understand the nature and consequences of his plea.  In light of the extensive mental health issues which permeated this case, a more detailed and probing determination was called for.[6]  In fact, at the close of the plea hearing, the Government joined in the defense motion to maintain the Court's prior order for neurological testing.

A sentencing hearing was held on April 28, 2005.  At that time until concluded on May 10, 2005, testimony was taken on numerous issues.  Foremost was the issue whether or not Defendant Boehm should receive a leadership enhancement for the 841, 846 conspiracy.  While

---

[5]Less than one week earlier, the Court had conducted a competency hearing at which it had been presented with numerous reports establishing a mental defect.  It's failure to recall these reports places in doubt the fact that any of them had been read.

[6]In June when Dr. Jacobson's report was first proffered, the Defendant was intent on the use of a diminished capacity / insanity defense. The Court foreclosed that issue due to counsel's failure to timely assert the defense or the expert.

12

**Statement of Facts**

1  extensive psychiatric, neurological and psychological was taken the
2  Court.  While the Court did not find that Defendant suffered from
3  dementia, he did find that Defendant did duffer from a cognitive
4  disorder NOS, an amplified by the defense experts.  Upon making this
5  finding, the competence of Defendant to enter the plea should have
6  again been addressed, but neither counsel not the Court did so.

7  The Court then made findings based on a preponderance of the
8  evidence that Defendant Boehm was a leader, organizer and not entitled
9  to the safety valve.  The Court did knowing full well that this
10 finding would exceed the Defendant's maximum sentence based on a fact
11 not admitted by him or forced by a jury.

DATED this 4th day of April, 2007 at Encino, California.

                                    KENNER LAW FIRM



                                    By:_____/s/_____
                                        David E. Kenner
                                        California 41425
                                        16000 Ventura Blvd.
                                        Penthouse 1208
                                        Encino, California 91436
                                        Telephone: (818) 995-1195

13

**Statement of Facts**