NELSON P. COHEN
United States Attorney

FRANK V. RUSSO
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: Frank.Russo@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:04-cr-00003-01-JWS-HRH |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S OPPOSITION |
| | ) | TO MOTION TO VACATE |
| vs. | ) | SENTENCE UNDER |
| | ) | 28 U.S.C. § 2255 |
| JOSEF FRANZ BOEHM, | ) | |
| a/k/a "Joe Millionaire", | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW, the United States of America, by and through undersigned

counsel, and hereby opposes Josef Franz Boehm's petition to vacate his sentence

pursuant to 28 U.S.C. § 2255.

## **INTRODUCTION**

Josef F. Boehm moves to vacate his conviction and 135-month sentence he received pursuant to a plea agreement in which he agreed to waive his right to collaterally attack his conviction and sentence. Nonetheless, Boehm attempts to evade his waiver essentially by raising two claims. First, notwithstanding an evidentiary hearing that conclusively established his competency, Boehm claims that he was not competent to enter a knowing and voluntary guilty plea. Second, Boehm, a successful businessman who had initialed each page of the plea agreement and, under oath, told the Court that he read it, claims that he was somehow misled by his four privately retained attorneys, who he now claims were ineffective for securing the 135-sentence contemplated by the plea agreement. Boehm, who earlier unsuccessfully attempted to appeal his conviction and sentence in violation of an appellate waiver provision in his plea agreement, now similarly attempts to evade his collateral attack waiver provision in the same agreement.

The defendant's petition should be denied on both substantive and procedural grounds. First, Boehm was competent to enter a guilty plea pursuant to a plea agreement. An evidentiary hearing indisputably established his competency and five days later the Court accepted his guilty plea after a complete Rule 11

colloquy.   Boehm's claims of ineffective assistance of counsel are belied by his sworn testimony to the contrary.   Thus, his collateral attack waiver was valid, which forecloses any of his claims regarding how his sentencing hearing was conducted.   Notwithstanding the validity of this waiver, the defendant's claims lack substantive merit in any event.   Finally, no evidentiary hearing is necessary, as the issues that Boehm raises were either fully litigated before the district court or are clear based on a review of the record.   Quite simply, Boehm's unrealized hope for a lesser sentence than the 135-month ceiling to which he agreed is not a reason to vacate his guilty plea.

## **BACKGROUND**

The Indictments and Investigation

By indictment dated January 21, 2004, the defendant, Josef  F. Boehm, along with three co-defendants, was charged with Conspiracy to Distribute cocaine and cocaine base to persons under 21 years of age, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 859(a), and related crimes.  [Presentence Report, dated January 27, 2005, hereinafter "PSR", ¶ 6; Indictment.]  Thereafter, the indictment was superseded several times to reflect additional crimes as well as changes in the law based upon the Supreme Court's decision in  Blakely v. Washington, 124 S. Ct. 2531 (2004), and its progeny. [See, PSR, ¶¶ 9, 12, 15, 18.]

Ultimately, the defendant faced a 16-count indictment, charging him Conspiracy to Distribute cocaine and cocaine base to persons under 21, as set forth above; Conspiracy to commit the crime of Sex Trafficking of Children, in violation of 18 U.S.C. § 371; eight counts of Sex Trafficking of Children, in violation of 18 U.S.C. § 1591; Distribution of a Controlled Substance to a Pregnant Individual, in violation of 21 U.S.C. § 861(f); Controlling a Place for the Distribution of Controlled Substances, in violation of 21 U.S.C. § 856(a)(2), (b); Possession of a Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); and being a Felon and Unlawful User in Possession of Firearms and Ammunition, in violation of 18 U.S.C. § 922. [PSR ¶ 18].

The indictments stemmed from an investigation by the Anchorage Police Department ("APD") and Federal Bureau of Investigation ("FBI") that uncovered a sex trafficking and drug distribution ring involving defendant Josef Boehm, Bambi Tyree, Allen Bolling, and Leslie Williams from late 2001 through December 22, 2004. [Indictment, Count 1.] The indictment alleged that the defendant was the organizer of a conspiracy that made available cocaine and crack cocaine to juveniles, who, in return would have sex with Boehm and other members of the conspiracy. [PSR, Attachment A, ¶ 3.] The United States Probation Office ("USPO") found that, during the course of the conspiracy, the

defendant and his co-defendants distributed drugs to approximately 12 persons

between the age of 13 and 21. [PSR, Attachment A, ¶ 3.][1]

Pre-Trial Proceedings

Defendant Boehm, also known by some of the children in the house as "Joe

Millionaire," was the owner of Alaska Industrial Hardware, a corporation that

included ten hardware stores operating throughout Alaska. [PSR, ¶ 91.]  Boehm

hired four private attorneys to vigorously defend the charges against him: three

prominent local attorneys (Phillip Weidner, Kevin Fitzgerald, and Rex Butler) and

one California attorney (Joseph Shemaria).  [PSR, ¶ 19.]   During the course of

the proceedings, the four defense attorneys filed over 67 pre-trial motions, as well

as over 90 separate requests for relief, not to mention requests for reconsideration

and objections to magistrate judge rulings. [See, Order from the Court at docket

434, attached within Exhibit 1 to defendant's motion to vacate, p. 73.]  A week of

evidentiary hearings were held, resulting in the suppression of  evidence obtained

from Boehm's house on May 11, 2003.  [See, PSR, ¶  18.]

---

[1]    Attachment A to the PSR sets forth the disturbing details of this conspiracy and the devastating impact it had on its victims, which will not be repeated herein.  Many of the details of Attachment A of the PSR were objected to by the defendant at sentencing, but the great majority of such objections were overruled at the nine-day sentencing hearing after the United States met its burden of proof on these statements.

It was undisputed during the course of the proceedings that Boehm had abused crack cocaine during the period of the conspiracy; indeed, two counts of the indictment alleged that Boehm was an "unlawful user" in possession of firearms and ammunition. [PSR, ¶ 12.] Not surprisingly, given the amount of cocaine Boehm had ingested for the three year period leading up to his arrest, Boehm initially espoused odd beliefs and made seemingly strange statements to his attorneys after his arrest.[2] [See, Affidavit of Phillip Weidner and Rex Butler, attached to defendant's motion to vacate as Exhibit 1, filed at docket 890-2, pp. 36-39, ¶ 5.] However, these odd statements basically ceased during the course of the proceedings. [Id., p. 41, ¶ 10.]

The Competency Evaluation and Hearing

On July 27, 2004, days before Boehm's trial was scheduled to begin, Boehm's attorneys moved for a competency hearing pursuant to 18 U.S.C. § 4241, alleging that Boehm's odd beliefs suddenly reappeared. [Id.] An affidavit from a medical doctor, Gary Jacobsen, as well Boehm's attorneys, supported this motion. At the time, all of the factual allegations concerning the reasons for the

---

[2]    Within his motion to vacate, the defendant asserts that "Magistrate Branson declined the request to transfer for a mental examination." This is only partially true. Magistrate Judge Branson was willing to sign an order allowing medical and psychiatric personnel to evaluate Boehm within the confines of the jail, but unwilling to release Boehm for this purpose.

competency hearing request were redacted by defense counsel, as well as heard in camera by the district court. [See id., pp. 79-87.]   The Court conducted an ex parte examination of Boehm, which "produced testimony which the court [found] diminishes the extent of impairment suggested in the affidavits from Mssrs. Weidner and Butler [Boehm's attorneys]."   See, Order from Chambers, filed at docket 471, attached hereto as Exhibit A, p. 4.  Moreover, the Court reviewed audiotapes of Boehm's telephone calls from jail, submitted by the government at docket 464, which also undermined the defendant's claims of incompetency: "Indeed, his conversations on those tapes are those of a careful and calculating individual who sounds competent to make decisions about his properties, his business interests, and his defense in this case." [Ex. A, p. 3.]  Nevertheless, faced with the fact that the allegations were "coupled with the opinion of Dr. Jacobsen and the assessments of two experienced criminal lawyers," the court had "no choice" but to order a competency hearing pursuant to the provisions of 18 U.S.C. § 4241, and ordered a psychiatric examination be conducted by the Bureau of Prisons pursuant to the procedures set forth in 18 U.S.C. § 4247. [Ex. A, p. 5; PSR, ¶ 14.]  The court's order had the effect of continuing the trial date several months, during which time many of the government's juvenile witnesses got older, some attaining the age of majority and losing the benefit of

testifying in a closed courtroom as permitted by earlier court order. This fact was well known to the defense and recognized by the court, which was "very concerned about the timing of a competency determination" given the "substantial negative impact this second continuance in the trial date will have on [the victims]." [Ex. A, pp. 4, 6.]

By report dated September 22, 2004, the Federal Bureau of Prisons issued a forensic evaluation of the defendant. The report was submitted to the Court,[3] and then distributed to both the defendant and the United States by Order from Chambers filed at docket 546. A copy of the Court's Order, along with the evaluation report, is attached hereto as Exhibit B. The Court Order stated "[i]n light of the Evaluation it does not appear that there is likely to be a serious dispute about Boehm's competency." [Ex. B, Court's Order] Indeed, the 17-page evaluation report eviscerated any claims that Boehm could not understand the charges against him or could not assist his defense counsel. Quite the contrary, Boehm specifically refused to discuss with doctors details pertaining to the crimes of which he was accused, citing the advice of his lawyers. [Ex. B, Forensic Evaluation, p. 2.] Boehm even met with his attorneys regularly during the

---

[3]    The doctors that perform such evaluations act as officers of the court and serve in a non-partisan manner. See United States v. Stone, 358 F.2d 503, 506 (9th Cir. 1966).

competency evaluation process. [Id., p. 14.] In summary, the evaluation concluded that "there was no objective information or evidence" that impaired the defendant's ability to comprehend the nature and consequences of the proceedings or his ability to properly assist in his own defense. [Id., p. 17.]

Nevertheless, the court held a competency hearing on November 17, 2004, at which Dr. Lisa Hope testified concerning her forensic evaluation of the defendant. A copy of the transcript of these proceedings is attached hereto as Exhibit C. Dr. Hope testified that she conducted a formal evaluation process of the defendant, which lasted about a week. [Ex. C, p. 8.] During this time, she administered tests and had conversations with Boehm. On one occasion, the defendant interrupted a session with Dr. Hope to participate in a conference call with attorneys on a civil case; he also continued to meet with his current attorneys and interview a new attorney for his criminal case. [Ex. C, p. 9.] These meetings were significant evidence to Dr. Hope that the defendant was able to work with his attorneys. [Ex. C, p. 10.] The results of the tests Dr. Hope administered indicated that Mr. Boehm had a higher IQ than most inmates and that there was no indication of any impairment with his ability to assist in his defense or understand the nature of the charges. [Ex. C, p. 12.]

Dr. Hope specifically addressed some of the defense allegations concerning the defendant's "fixed delusions," and found no merit to them. In fact, Dr. Hope explained that these alleged "delusions" were neither fixed nor deluded, in that there was "a very organized, lucid, and understandable reasoning for the statements." [Ex. C, pp. 16-17.] Dr. Hope gave several examples of this reasoning. [Ex. C, pp. 17-19.] Although Dr. Hope testified that a CT scan and an ultrasound were recommended by the chief medical officer at the facility, such recommendations were based on medical concerns rather than competency. [Ex. C, p. 15.] In fact, even if these scans would have been performed, they would not have had an impact on her competency evaluation. [Ex. C, p. 15.] Finally, Dr. Hope reviewed approximately twelve hours of recordings of the defendant's telephone conversations in jail, which she commented were "rather striking in how different [they were] to the presentation described to me by his attorney . . . ." [Ex. C, p. 16.] Dr. Hope outlined the significance of these jail telephone calls in the evaluation report. [Ex. B, pp. 9-10.]

Dr. Hope testified on cross-examination that she had the opportunity to review reports from six defense experts, none of whom concluded that the defendant was not competent, and none of whom reviewed the defendant's jailhouse telephone recordings. [Ex. C, pp. 23, 40-41.] Further, she testified that

in the past she had been called as a witness by both the defense and the

prosecution, finding roughly half of the inmates she evaluated not competent.

[Ex. C, pp. 24, 27.]  Dr. Hope was the only witness called at the competency

hearing.  Understandably so, as none of the defense experts opined that the

defendant was not competent.  Given the compelling testimony of Dr. Hope,

Boehm's attorneys did not – and could not – argue that he was incompetent to

stand trial.  Rather, they simply submitted the matter on the record.  See,

Transcript after Dr. Hope's testimony, attached hereto as Exhibit D, p. 4.

Faced with the overwhelming evidence of the defendant's competency, the

district court issued the following finding:

> the evidence shows by more than a preponderance – indeed it is
> clear and convincing evidence – that the defendant Josef Franz
> Boehm presently is knowledgeable about and has a rational
> understanding of the charges against him and the proceedings
> required to resolve those charges.  The evidence also clearly
> and convincingly shows that Boehm is presently able to consult
> rationally with his lawyers and to participate fully and properly
> in his defense.

See, Order from Chambers dated November 17, 2004, attached to defendant's

motion to vacate as Exhibit 3.  The court allowed further brain testing to be

conducted to follow up on the Chief Medical Officer's recommendation within the

forensic evaluation, as well as to allow the defense to determine if the testing

would support its proffered diminished capacity defense.[4]  <u>See</u>, Minute Order

attached as Exhibit 10 to the defendant's motion to vacate; Ex. D, pp. 5 - 15.

<u>The Plea Agreement, Change of Plea Hearing, and Sentencing</u>

Faced with the fact that Boehm was clearly competent to stand trial,

Boehm's attorneys were left with little choice: engage in plea negotiations aimed

at attempting to preserve some of their 61 year old client's life, or risk a life

sentence.  These negotiations culminated in the defendant signing the plea

agreement on November 19, 2004. [<u>See</u>, Plea Agreement, attached to defendant's

motion to vacate as Exhibit 11.]  The agreement contained significant benefits to

the defendant.  Paramount among these benefits was the establishment of a 135-

month ceiling pursuant to Fed. R. Crim. P. 11(c)(1)(C).  Thus, the defendant

would have been able to withdraw from the agreement had the Court indicated its

intention to impose a higher sentence.  [<u>Id.</u>, pp. 3 - 4.]  The agreement

contemplated the defendant agreeing to plead guilty to conspiring to commit the

crimes of sex trafficking and drug distribution to persons under 21 (Counts 1 and

10), as well as admitting the forfeiture of his Oceanview home contained in

---

[4]      Within the defendant's motion to vacate, the defendant erroneously asserts that the
diminished capacity defense was foreclosed by the Court.  In fact, the Court specifically allowed the
defendant to introduce a diminished capacity defense with respect to all crimes requiring an
intentional state of mind, including the conspiracy charges.

Count 15.  In return, the United States agreed to dismiss the remaining 13 counts

of the indictment, including substantive sex trafficking and drug distribution

counts, as well as the forfeiture of Boehm's Anchorage condominium.

[Id., pp. 5 - 6.]  Both parties agreed that it would not seek any departures pursuant

to the United States Sentencing Guidelines (U.S.S.G.) or any other authority.

[Id., pp. 7, 13.]

        Within the plea agreement, the United States estimated a guideline range of

135 to 168 months, assuming that the defendant was found to be within criminal

history category I.  [Id., pp. 15 - 16.]  However, the parties disagreed on the

applicability of an enhancement for role in the offense.  The United States

contended that the defendant was the organizer / leader of the criminal activity,

subjecting him to a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c).  The

defendant, on the other hand, claimed that he was not an organizer / leader, and in

fact may be entitled to a mitigating role pursuant to U.S.S.G. § 3B1.2.

[Id., pp. 18-19.]  The court's finding on the defendant's role was significant, in

that if the Court found that he was not an organizer, he would be eligible for the

"safety valve" provision of U.S.S.G. § 5C1.2, as well as a two level reduction

pursuant to U.S.S.G. § 2D1.1(b)(9).  There being no sentencing "floor" on the

agreement, if the defendant qualified for "safety valve", the defendant was free to

argue for a sentence well below the ten year mandatory minimum.   At the very

least, if the defendant was not found to be an organizer / leader, his guideline

range would have been reduced by four levels (assuming the other qualifications

for "safety valve" were met).   The defendant agreed that the determination of his

role in the offense would be made by the Court, and would not need to be proven

to a jury beyond a reasonable doubt.  [Id., p. 9.]

      However, within the plea agreement, the defendant acknowledged:

> I understand that no one, including my attorney, can guarantee
> the outcome of my case or what sentence the Court may impose
> if I plead guilty.  I understand that the discussions between my
> attorney and me concerning my sentence exposure or the actual
> sentence the Court might impose are only estimates.

[Id., pp. 30-31.]  Moreover, before signing the agreement, the defendant

represented: "I have read this plea agreement carefully and understand it

thoroughly.  I know of no reason why the Court should find me incompetent to

enter into this agreement or plea."  [Id., p. 32.]  As if to underscore this point the

defendant not only signed the plea agreement but initialed the bottom of each

page – like any business document.  [Id., pp. 1 - 34.]

      Another significant concession contained within the defendant's plea

agreement was his waiver of both his right to appeal as well as to collaterally

attack his conviction.  Both of these waivers were set forth in detail in the plea

agreement.  [Id., pp. 7, 29.]  With respect to the collateral attack waiver, the only

exceptions set forth in the plea agreement were based on an involuntary plea or

ineffective assistance of counsel not known to the defendant at the time of

sentencing, or through the exercise of reasonable diligence could not have been

known by him at the time of sentencing.  [Id.]  Finally, within the plea agreement,

the defendant expressed satisfaction with his attorney.  [Id., pp. 29 ("I am fully

satisfied with the representation given me by my attorney").]  Two of Boehm's

attorneys signed the plea agreement on November 19, 2004.  They warranted:

> As counsel for the defendant , we have discussed with him the
> terms of this plea agreement, have fully explained the charge(s)
> to which he is pleading guilty and the necessary elements, all
> possible defenses, and the consequences of his plea.  Based on
> these discussions, we have no reason to doubt that the
> defendant is knowingly and voluntarily entering into this
> agreement and entering a plea of guilty.  We know of no reason
> to question his competency to make these decisions.  If, prior to
> the imposition of sentence, we become aware of any reason to
> question the defendant's competency to enter into this plea
> agreement or to enter a plea of guilty, we will immediately
> inform the Court.

[Id., p. 33.]  Their representations were buttressed by Dr. Hope's testimony at the

competency hearing five days prior, as well as the fact that none of the numerous

expert witnesses they retained opined that the defendant was not legally

competent.

A change of plea hearing was held on November 22, 2004, before Chief District Court Judge John W. Sedwick.  [See, Transcript of Change of Plea Hearing, attached to defendant's motion to vacate as Exhibit 12.]  Initially, the defendant was placed under oath, and Judge Sedwick made a preliminary inquiry into the defendant's background.  The defendant indicated that he had been the president of Alaska Industrial Hardware, a company that employed 220 employees and had an annual gross revenue of approximately $48 million dollars.  [Id., p. 5.]  The defendant again represented that he was satisfied with his attorneys' representation and their explanations of the sentencing guidelines that would apply to his case.  [Id., pp. 10 - 11.]  The defendant stated that no one threatened him or promised him anything to persuade him to plead guilty.  [Id., p. 11.]

The court then summarized the plea agreement, including the defendant's waivers of his right to appeal and to collaterally attack his sentence. [Id., pp.12 - 14.]  The defendant agreed that the court had accurately summarized the plea agreement, with the caveat that, with regard to role in the offense, he was only agreeing to waive his right to have his role in the offense proven to a jury beyond a reasonable doubt.  [Id., pp. 14-16.]  The court explained to the defendant the statutory maximum penalties, the mandatory minimum penalties, and the defendant's trial rights. [Id., pp. 18 - 23.]  The defendant agreed to the factual

basis put on the record by the government and pled guilty. The court accepted the defendant's guilty plea and found that it was supported by an independent basis in fact. [Id., pp. 23 - 26.] Finally, the court allowed its order regarding transportation of the defendant to a medical facility for brain scan testing to remain in effect, as the defendant hoped it would lend support to his role in the offense argument. [Id., p. 28.]

On or about April 28, 2005, the parties commenced a nine-day sentencing hearing. The focus of the hearing was to determine whether Boehm functioned as an organizer or leader of the conspiracy. To this end, the defense called six expert witnesses, who collectively were paid well over $100,000 to issue expert reports and testify at sentencing. Not surprisingly, the defense experts essentially opined that the defendant suffered significant cognitive impairment and severe deficits in "executive functioning." To rebut this testimony, the United States submitted reports of two of its own experts, Dr. Ronald Martino and Dr. Irving Rothrock. Copies of their expert reports are attached hereto as Exhibits E and F, respectively. Moreover, Dr. Martino testified at sentencing, rebutting conclusions reached by Dr. Kowell, the defense expert. A copy of his testimony at sentencing is attached hereto as Exhibit G. The United States also submitted grand jury transcripts of witnesses, which all supported the conclusion that Boehm was the organizer of the

conspiracy, and far from the puppet that the defense portrayed.  At the end of the hearing, Judge Sedwick agreed with the United States, that Boehm was subject to a two-level guideline enhancement for his role in the offense, and that he was not suffering from dementia.  [See, Copy of Partial Imposition of Sentence Transcript, attached to the defendant's motion to vacate as Exhibit 14.]  The Court imposed a 135- month sentence, which was the top of the plea agreement's range pursuant to Fed. R. Crim. P. 11(c)(1)(C) but still at the bottom of the advisory guideline range. The judgment of conviction was filed on May 17, 2005.  A copy of the judgment is attached hereto as Exhibit H.

## Post-Conviction Proceedings

The defendant filed a notice of appeal on May 19, 2005.  The United States moved to dismiss the notice of appeal on June 5, 2005, citing the appellate waiver provision of his plea agreement.  The Ninth Circuit dismissed the appeal on October 14, 2005.  The defendant then moved for rehearing, which was denied on February 27, 2006.  On May 24, 2007, the defendant filed a petition to vacate his sentence pursuant to 28 U.S.C. § 2255.  The next day, the defendant filed a memorandum of points and authorities in support of his petition, attaching 14

exhibits.[5]  Essentially, the defendant argues that, the contrary findings of the

expert witnesses and the district court notwithstanding, that the defendant was not

competent to plead guilty, and therefore his plea was involuntary.  Because his

plea was involuntary, the argument continues, the provisions in the plea agreement

regarding his waiver of his right to collaterally attack his conviction are

unenforceable.  To support this claim, the defendant relies upon his previously

submitted retained expert reports, which he claims hint at the defendant's

incompetency despite never offering that opinion.  Conspicuously absent from the

defendant's filings are the competency evaluation report received by the Court,

Dr. Hope's testimony before the district court, and expert reports submitted by the

government that contradicted the defendant's experts.

Furthermore, the defendant argues that he received ineffective assistance of

counsel from his four privately retained attorneys, who he claims should have

again raised the issue that the defendant was not competent to plead guilty with

the district court before sentencing, despite the fact that all evidence indicated

otherwise.  Finally, the defendant argues that the district court applied an improper

standard of proof at sentencing, even though the defendant specifically agreed to

---

[5]     Three additional exhibits were filed on August 20, 2007.

that standard of proof and the findings of the district court were in accord with the

current state of the law.

## TIMELINESS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996

established a one-year period of limitations for collateral relief under 28 U.S.C. §

2255. The limitations period runs from the latest of several potentially applicable

dates. In a case such as the one at bar, where the defendant's appeal was denied,

the judgment of conviction becomes final 90 days after entry of the court of

appeals judgment. Clay v. United States, 537 U.S. 522 (2003). Here, given that

the petition for rehearing was denied on February 27, 2006, the defendant had

until May 27, 2007 to file his petition. Thus, the petition was filed timely.

## ARGUMENT

## I.    BOEHM WAS FULLY COMPETENT TO ENTER A KNOWING, VOLUNTARY AND INTELLIGENT PLEA.

Boehm, apparently realizing the binding nature of his waiver of the right to

collaterally attack his sentence, attempts to claim that his plea was involuntary in

an attempt to avail himself of one of the narrow exceptions to this waiver. Thus,

in a reprise of his original tactics, Boehm returns to this Court essentially claiming

that the outcome of the competency hearing was incorrect and therefore the

Court's colloquy with Boehm was inadequate to ensure his plea was made knowingly and voluntarily. This is not the case, as all of the facts, the reports of Boehm's mental state, testimony, and the law all support Boehm's competency and his ability to  enter a knowing and voluntarily guilty plea.

A defendant is competent to stand trial when he has, "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and has, "a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam); accord, Drope v. Missouri, 420 U.S. 162, 171 (1975).  The standard for competence to enter a plea or to waive a constitutional right is the same as the standard for competence to stand trial.  Godinez v. Moran, 509 U.S. 389, 398 (1993).   Appellate courts review the district court's determination of competence is reviewed for clear error.  United States v. Timbana, 222 F.3d 688, 700 (9th Cir. 2000).  "In performing its fact-finding an credibility functions, a district court is free to assign greater weight to the findings of experts produced by the government than to the opposing opinions of the medical witnesses produced by the defendant."  United States v. Gastelum-Almeida, 298 F.3d 1167, 1172 (9th Cir. 2002) (citing United States v. Frank, 956 F.2d 872, 875 (9th Cir. 1991)).

The evidence taken during the course of the proceedings at the district court overwhelmingly showed that Boehm was legally competent.  The defendant is foreclosed from re-litigating that determination.  The thorough and detailed colloquy during Boehm's change of plea satisfied all of the requirements of Rule 11, ensuring that Boehm's guilty plea was counseled, voluntary, and knowingly made.

   A.    <u>Because the Defendant's Competency was Fully Litigated before the District Court, the Defendant is Barred from Raising the Issue in a § 2255 Motion.</u>

The issue of Boehm's competency was explored extensively by the district court, which held an evidentiary hearing on the defendant's competency days before he pled guilty.  Because this issue was fully litigated, the defendant is barred from now attempting to vacate his plea because he claims that he was nonetheless incompetent to plead guilty.  <u>See</u>, <u>Hanson v. United States</u>, 406 F.2d 199 (9th Cir. 1969).  <u>Hanson</u> stands on "all fours" with the case at bar.  There, counsel for the defendant moved for a psychiatric examination pursuant to 18 U.S.C. § 4244.[6]  <u>Id.</u> at 200.  A psychiatrist was appointed who examined the defendant and filed a report indicating that the defendant was mentally ill but not

_____

   [6]    18 U.S.C. § 4244 was the predecessor of 18 U.S.C. § 4241, which is the statute that now governs competency.

legally insane.  Id.  Despite this report, the "very experienced trial judge"
nonetheless ordered a hearing to afford the accused and counsel full opportunity to
examine the psychiatrist and produce other evidence.  Id.  At the hearing, the
parties merely submitted the matter based on the psychiatrist's report, and the
defendant was found competent to stand trial.  The defendant then entered a plea
of guilty.  Id.

Prior to sentencing, counsel for the defendant filed a new motion for a
psychiatric examination, which the district court granted.  Id.  This time, two
psychiatrists arrived at different conclusions regarding the defendant's
competency, and the court held a hearing during which both psychiatrist reports
were considered.  Id. at 201.  The court found the defendant competent, and the
defendant was sentenced.  The defendant then filed a motion pursuant to § 2255,
alleging mental incompetence during the time of his arraignment, plea, and
sentence.  Id.  The district court denied the petition without a hearing, stating that
"the records of the case conclusively showed that the exact issues sought to be
raised had been fully heard and adjudicated; that the decision had been contrary to
that urged by the petitioner; and that it would be an absurdity to require the Court
to afford an additional hearing."  Id.  The defendant then appealed.

The Ninth Circuit reviewed two prior cases in which it commented on the issue, <u>Bell v. United States</u>, 269 F.2d 419 (1959), and <u>Stone v. United States</u>, 358 F.2d 503 (1966), neither of which conclusively decided the situation before it, but gave "tacit acceptance to the general rule that, absent some unusual circumstances, where the question of mental competency has been determined in a Section 4244 proceeding prior to trial or prior to entry of plea of guilty, a Section 2255 collateral attack on the sentence based on the same ground will not ordinarily be permitted." <u>Id.</u> at 202. There being no unusual circumstances, and because the trial judge's findings of competency were not "clearly erroneous," the Ninth Circuit affirmed the district court's denial of the defendants's § 2255 petition. <u>Id.</u>

This Court should do likewise. Like <u>Hanson</u>, the court ordered a forensic evaluation of Boehm's competency to stand trial. Boehm's examination was exhaustive, and consumed approximately one week. [Ex. C, p. 8.] Dr. Hope issued a comprehensive 17-page report, which eviscerated any claim that the defendant was somehow not competent to understand the proceedings or assist his counsel. Indeed, Boehm refused to answer Dr. Hope's questions based upon advice from his attorneys, even cutting sessions with the doctor short so he could attend conference calls with civil attorneys. [Ex. B, p. 2; Ex. C., p 9.] Despite the fact that he was not required to be given the forcefulness of the forensic

evaluation, Judge Sedwick held a competency hearing during which Dr. Hope

testified and was cross-examined.  Given the reports of Dr. Hope and Boehm's

own retained experts, it would have strained credibility to argue to the court that

Boehm was somehow not competent to stand trial.  See, e.g., Ex. D, p. 4.  Indeed,

this case presents a stronger factual scenario than Hanson to bar a § 2255

collateral attack on competency, as there was live testimony at a competency

hearing; unlike Hanson, there were no disputed opinions, but rather all evidence

pointed to the defendant's competency.

Moreover, another six months of court proceedings, including voluminous

testimony from several experts, did nothing to change the district court's

determination of the defendant's competency and indeed convinced the court even

more thoroughly of the defendant's ability to understand the proceedings and

control his surroundings – enough so that at sentencing Boehm was determined to

be an organizer the conspiracy in which he was charged.  At the sentencing

hearing, the defendant's mental health and brain function were explored in

painstaking detail by the defendant's medical experts.  None offered the opinion

that Boehm was not competent.  This is not surprising, given that these same

experts described Boehm's impairment as "subtle" [Dr. Budding's report, attached

to defendant's motion as Exhibit 6, p. 11], with "mild" and "minimal" calcific

plaque on the brain, and were "surprised by the lack of findings in the tests regarding the brain." [Testimony of Dr. Kowell, attached to defendant's motion as Exhibit 5, pp. 81, 104.]  Certainly if the defendant were so cognitively impaired and brain damaged to render him not competent to stand trial, the defense experts had every opportunity and reason to so testify.   Their lack of such findings, together with the reports of Dr. Hope (the court's competency expert), as well as those of Dr. Rothrock and Dr. Martino (the government's experts), support the conclusion that Boehm was a fully functioning 61-year old male whose judgment had been impaired due to prior cocaine usage, like many drug addicts.

Thus, Hanson controls the issue, and, there being no unusual circumstances to reopen Boehm's competency hearing, this court should summarily deny the defendant's request for relief.  Indeed, this case is vastly distinguishable from United States v. Timbana, 222 F.3d 688, relied upon by Boehm.  Timbana was a case involving a direct appeal – rather than collateral attack – challenging the defendant's competency to plead guilty.  There, the district court reviewed reports prepared by two doctors, both of which found the defendant competent, although both expressed concern about his ability to communicate and understand the trial. Id. at 701.  Indeed, the dissent pointed out that the defendant signed the written plea agreement with an "X", was paralyzed on one side of his body, brain-

damaged, and had an IQ of 72.[7]  Id. at 709.  Nevertheless, the court upheld the

district court's finding of competency and allowed the defendant's guilty plea to

stand.  Id. at 701.

Boehm, on the other hand, was the president of a multi-million dollar

company that employed over 200 individuals.  See, Transcript of Change of Plea

Hearing, attached to defendant's motion to vacate as Exhibit 12, p. 5.  Unlike

Timbana, Boehm has an IQ of between 100 and 104, according to both

government and defense experts.  Ex. B, Forensic Evaluation, p. 11; Dr. Budding's

expert report, Attached to defendant's motion as Exhibit 6, p. 5.  This was a man

who was familiar with documents far more complicated than his plea agreement.

Indeed, even when Boehm was under the influence of drugs – which he was not at

the time he entered his plea – the record shows he could review and comprehend

complicated documents.  For example, as noted in the pre-sentence report, a

business associate of Boehm testified in the grand jury as follows:

> We went to a closing on some paperwork that was this thick on
> an interest swap, a very sophisticated piece of paperwork, and I
> do it every day, and I'm pretty clear minded.  And I'm – I
> mean, I don't propose to be super intelligent, but I know I have
> at least average intelligence, and I picked up two errors that the
> bank had made, and Joe came in and he had a glass – his

---

[7]    The dissent argued that  the district court did not fully satisfy Fed. R. Crim. P. 11(f)
(now 11(b)(3)), requiring a factual basis for the plea.  Id. at 709.

> glasses on with half the side of it missing, to where he had to hold it, and he read the documents and he found five more mistakes. And that was in the middle of all this [drug use]. So he could be totally out of it, but yet mentally he could be clairvoyant when it came to anything of legal paperwork.

[PSR, Attachment A, ¶ 45.] As if to emphasize this point, Boehm not only signed the plea agreement but initialed the bottom of each page, as he would any other business document. See, Plea Agreement, attached to defendant's motion to vacate as Exhibit 11. This is a far cry from the lack of sophistication displayed by the defendant in Timbana, who signed his plea agreement with an "X". At the very least, it renders apocryphal Boehm's current claims that he "recalls not being given the plea agreement to read, but merely to sign" and "[t]he terms and conditions of the agreement were related to him generally."

Given the overwhelming evidence of Boehm's competency, his attorneys could not seriously contest his ability to understand the proceedings and assist in his defense. Accordingly, the court found that clear and convincing evidence supported Boehm's legal competency. Five days later, the defendant appeared before the court to plead guilty.

B.     Boehm Entered a Knowing, Voluntary and Intelligent Plea of Guilty.

On November 22, 2004, after he was thoroughly questioned by the district court to ensure that he was aware of the rights he was waiving and that he was

acting of his own volition, Boehm pleaded guilty to two of the 16 counts contained in the indictment.  To determine whether a defendant understood his plea agreement and his plea, the District Court may examine the Rule 11 colloquy. United States v. Nostratis, 321 F.3d 1206, 1209 (9th Cir. 2003). The Rule 11 requirements, "are designed to ensure that the criminal defendant who pleads guilty understands exactly what the plea means."  United States v. Rios-Ortiz, 830 F.2d 1067, 1070 (9th Cir. 1987).  Federal Rules of Criminal Procedure 11(b) and (c) specifically outline the procedures the court should follow when accepting a plea of guilty and a plea agreement.

Here, the change of plea hearing fully satisfied the requirements of Rule 11. Judge Sedwick first asked the defendant whether there was anything that could impair Boehm's reasoning or ability to make a decision.  Boehm replied "no." See, Transcript of Change of Plea Hearing, attached to defendant's motion to vacate as Exhibit 12, p. 6.  The defendant also confirmed that he had never been treated for any mental illness – a confirmation in accord with the reports submitted at the competency hearing.  Id. at 7-8.  Boehm said nothing to lead the Court to believe he was in any way unable to understand or comprehend either the proceedings before him, his entry of a guilty plea, or his plea agreement.

Furthermore, the court conducted a textbook Rule 11 inquiry, including advising

the defendant of the following:

- the government's right to use in a prosecution for perjury or false statement, any statement the defendant gives under oath, Id. at 4; Fed. R. Crim P. 11(b)(1)(A);

- the right to plead not guilty, or having already so pleaded, to persist in that plea, Id. at 4; Fed. R. Crim P. 11(b)(1)(B);

- the right to a jury trial,  Id. at 8; Fed. R. Crim P. 11(b)(1)(C);

- the right to representation by counsel, and the right to court appointed counsel, if necessary, at every stage of proceeding, Id. at 22; Fed. R. Crim P. 11(b)(1)(D);

- the right at trial to confront witnesses for the opposition, to be protected from compelled self-incrimination, to present evidence and testimony, and to call witnesses, Id. at 22-23; Fed. R. Crim P. 11(b)(1)(E);

- the defendant's waiver of his trial rights if he enters a plea of guilty, Id. at 23; Fed. R. Crim P. 11(b)(1)(F);

- the nature of each charge to which the defendant is pleading, Id. at 8-10; Fed. R. Crim P. 11(b)(1)(G);

- any maximum possible penalties, including imprisonment, fines, or terms of supervised release, Id. at 18-19; Fed. R. Crim P. 11(b)(1)(H);

- any mandatory minimum penalty, Id. at 19, 22; Fed. R. Crim P. 11(b)(1)(I);

- any applicable forfeiture, <u>Id.</u> at 13, 18; Fed. R. Crim P. 11(b)(1)(J);

- the court's authority to order restitution, <u>Id.</u> at 12, 18; Fed. R. Crim P. 11(b)(1)(K);

- the court's obligation to impose a special assessment, <u>Id.</u> at 13, 18; Fed. R. Crim P. 11(b)(1)(L);

- the court's obligation to apply the Sentencing Guidelines, and the court's discretion to depart from those guidelines in certain circumstances, <u>Id.</u> at 10; Fed. R. Crim P. 11(b)(1)(M);

- the terms of any plea-agreement provision waiving the right to appeal or collaterally attack the sentence, <u>Id.</u> at 13, 17; Fed. R. Crim P. 11(b)(1)(N).

Additionally, the Court addressed the defendant to ensure that the plea was made voluntarily, was not the result of force, threats or promises other than those in the plea agreement [Fed. R. Crim. P. 11(b)(2); <u>Id.</u> at 11], and determined the factual basis for the plea. [Fed. R. Crim. P. 11(b)(3); <u>Id.</u> at 25.] Boehm further affirmed that he had read his plea agreement and discussed it with his lawyers. <u>Id.</u> at 11. Boehm specifically acknowledged that he understood the document, and did not have any questions about it. <u>Id.</u> at 16. Again, at no point did Boehm profess to any lack of understanding about the plea agreement or his plea, and at no point did Boehm make any suggestion that he was not, capable, competent, or aware enough to plea guilty and agree to the terms of the plea agreement.

Accordingly, his current claims that he did not read or understand the plea

agreement must be viewed with a jaundiced eye.  <u>See</u>, <u>United States v. Castello</u>,

724 F.2d 813, 814 (9th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1254, 104 S. Ct. 3540 (1984)

(district court entitled to credit testimony at Rule 11 hearing over subsequent

arguments and affidavit).

There was never any serious issue about Boehm's competency.  That being

the case, the district court's finding, after a thorough and complete Rule 11

colloquy, that Boehm was fully competent and capable of entering a knowing and

voluntary plea was well supported and proper.

## II.    BOEHM RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL

Boehm next tries to circumvent the waiver provision of his plea agreement

by claiming that he received ineffective assistance of counsel.  In order to succeed

on an ineffective assistance of counsel claim, the defendant would have to show

both inadequate performance by counsel and prejudice arising therefrom.

<u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  With regard to inadequate

performance, the defendant is required to point to specific errors and omissions in

the record.  <u>United States v. Johnson</u>, 820 F.2d 1065, 1073 (9th Cir. 1987).

> The essence of an ineffective assistance of counsel claim
> is that "counsel's conduct so undermined the proper
> functioning of the adversarial process that the trial

> cannot be relied on as having produced a just result" . . . .
> In establishing prejudice [the defendant] "must show that
> there is a reasonable probability that, but for counsel's
> unprofessional errors, the results of the proceeding
> would have been different." Counsel's errors must be
> "so serious as to deprive defendant of a fair trial, a trial
> whose result is reliable."

Williams v. Calderon, 52 F.3d 1465, 1469 (9th Cir. 1995)(internal citations

omitted). Moreover, "where the ineffective assistance claim is based on counsel's

failure to investigate or put on specific evidence, the defendant must make specific

allegations about the content of the proposed testimony in order to show how the

failure to present that evidence proves prejudice." United States v. Dalton, 785

F. Supp. 126, 128 (D. Montana 1990).

   Boehm cannot meet either of the prongs required by Strickland. Boehm had

four experienced criminal defense attorneys that filed scores of motions on his

behalf (prevailing on some). These attorneys also had two private investigators

that interviewed numerous witnesses and reviewed evidence. Boehm's chief

complaint about his attorneys appears to be that they should have more

aggressively litigated his competency. However, his attorneys retained six

different doctors who offered their expert opinions on his mental state, with none

concluding Boehm was not competent. Moreover, Boehm's mental state was

throughly explored by his attorneys at the nine-day sentencing hearing. After the

proceedings, not only was the district court convinced that Boehm was competent, but found that his mental state was such that he could function as the organizer of the conspiracy. That being the case, an argument by his attorneys that he was not competent would have been frivolous.

Boehm also attempts to fault his attorneys for not interviewing certain witnesses. However, closer examination contradicts these claims. For example, he claims that his attorneys did not interview Vince Bloomfield, who claimed that he was allegedly victimized by Bambi Tyree. <u>See</u>, Defendant's motion to vacate, pp 28-29. Not only did Boehm's attorney's interview Bloomfield, but the defendant's sentencing memorandum is replete with references to the transcript of Bloomfield's interview. <u>See, e.g.</u>, Defendant's Sentencing Memorandum, filed on April 22, 2005, p. 9.[8] Indeed, they expected Bloomfield to be a witness at the sentencing hearing, but he chose to invoke his right to remain silent under the Fifth Amendment. As to Tina Arndt, the tape recordings submitted to the court at docket 464 demonstrate that Boehm and his attorneys were attempting to locate Arndt, who was avoiding them – for good reason, as Arndt was an unindicted

---

[8]    The 57-page sentencing memorandum filed on the defendant's behalf contains an estimated guideline range of 57 to 71 months, which is what Boehm's attorneys argued at sentencing.

co-conspirator.  With regard to Deborah Axt, she testified at the sentencing

hearing and was vigorously cross-examined by Boehm's counsel.[9]

Boehm certainly cannot show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been

different."  Id.  Furthermore, the court must always "indulge in a strong

presumption that counsel's conduct falls within the wide range of reasonable

professional assistance."  Id. at 689.

Moreover, Boehm himself not only told the court that he was satisfied with

his attorney's representation, but agreed that they had done an adequate job of

investigating the facts and the law, and had answered any questions that he had

about how the sentencing guidelines would apply to him.  [Ex. 12 to defendant's

motion to vacate, pp. 10-11.]  His acknowledgment that he accepted his attorney at

the time he pled guilty defeats his subsequent claims of prejudice.  United States v.

Rubalcaba, 811 F.2d 491, 494 (9th Cir.), cert. denied, 484 U.S. 832 (1987)

(citations omitted);  Chua Han Mow v. United States, 730 F.2d 1308, 1311 (9th

Cir. 1984), cert. denied, 470 U.S. 1031, 105 S. Ct. 1403 (1985).  Statements made

---

[9]    Within his memorandum, Boehm claims that Ms. Axt  recanted earlier claims about Boehm asking her to buy her daughters.  Not so.  A comparison of her testimony at her deposition and her testimony at the sentencing hearing show that they are consistent.  The difference, if any, in her testimony is semantic in nature.  See, Ex. 15 to defendant's motion to vacate, pp. 101-106.

by a defendant at the time he changes his plea "carry a strong presumption of verity." <u>United States v. Rivera-Ramirez</u>, 715 F.2d 453, 458 (9th Cir. 1983). In <u>Rivera-Ramirez</u>, the defendant moved to withdraw his plea, arguing that his attorney misled him in negotiating a plea and provided ineffective assistance. The district court properly relied upon the defendant's averments at the plea hearing that he was satisfied with his representation and rejected his after-the-fact statements to the contrary. <u>Id.</u>

Again, this Court should do likewise. Boehm's four criminal defense attorneys were experienced, but they were not magicians. They could not change the fact that Boehm committed the crimes charged in the indictment, nor could they surmount the entirety of the evidence gathered by the government in its investigation. Faced with this reality, they succeeded in preventing a potential life sentence for their client by securing a plea agreement that limited Boehm's sentence to 135- months. That constitutes effective, rather than ineffective assistance of counsel.

## III.  BOEHM WAIVED HIS RIGHT TO COLLATERALLY ATTACK HIS SENTENCE.

Boehm was competent to plead guilty and entered a knowing and voluntary plea based on sound advice from his attorneys. As such, the waivers of collateral

attack contained in his plea agreement are binding.  Boehm made an express

written waiver of the right to collaterally attack his conviction and sentence, with

limited exceptions.  [Plea Agreement, Ex. 11, pp. 7-8; 29].  The only exceptions to

this waiver are for challenges alleging ineffective assistance of counsel based

upon information not known to the defendant at the time the court imposed

sentence, and for challenges to the voluntariness of his guilty plea.  [Id.]  As

discussed above, Boehm was clearly competent to plead guilty and his plea was

knowing and voluntary.  His four retained lawyers were not ineffective.  Thus, all

of the defendant's other claims are subject to his collateral attack waiver.

　　　"The right of appeal, as we presently know it in criminal cases, is purely a

creature of statute . . . "  United States v. Navarro-Botello, 912 F.2d. 318, 321 (9th

Cir. 1990) cert. denied, 112 S. Ct. 1488 (1992).  Accordingly, the Ninth Circuit

Court of Appeals regularly enforces "knowing and voluntary waivers" of appellate

rights in criminal cases when they are part of negotiated guilty pleas.  United

States v. Michlin, 34 F.3d 896, 898 (9th Cir. 1994); United States v. Jeronimo, 398

F.3d 1149 (9th Cir. 2005).  Similarly, the Ninth Circuit recognizes and enforces

waivers of a defendant's right to challenge his sentence pursuant to 28 U.S.C. §

2255.  United States v. Pruitt, 32 F.3d 431, 433 (9th Cir. 1994); United States v.

Abarca, 985 F.2d 1012, 1014 (9th Cir.) cert. denied, 508 U.S. 979 (1993).

Moreover, while claims of ineffective assistance of counsel are often excluded from such waivers, collateral attacks that allege ineffectiveness at sentencing and do not directly relate to the voluntariness of the plea can be waived.  See, United States v. Cockerham, 237 F.3d 1179, 1186-87 (10th Cir. 2001), relying in part on United States v. Broce, 488 U.S. 563, 569 (1989) (collateral attack is "ordinarily confined to whether the underlying plea was both counseled and voluntary.").

The defendant confirmed that he understood he was waiving his right to collaterally attack his sentence when he entered into the plea agreement.

> I am fully aware that if I were convicted after a trial and sentence were imposed on me thereafter, I would have the right to appeal any aspect of my conviction and sentence.  Knowing this, I voluntarily waive my right to appeal my conviction.  Furthermore, I also knowingly and voluntarily agree to waive my right under 18 U.S.C. § 3742 to appeal any aspect of the sentence imposed in this case, if the Court accepts this agreement and imposes a sentence no greater than 135 months.  Furthermore, I knowingly and voluntarily waive my right to collaterally attack any aspect of my conviction or sentence, except for a challenge based upon ineffective assistance of counsel – based on information not now known by me and which, in the exercise of due diligence, could not be known by me by the time the Court imposes the sentence – which affected either my guilty plea or the sentence imposed by the Court.  I am fully satisfied with the representation given me by my attorney.

[Ex. 11 to defendant's motion to vacate, p. 29 (emphasis added)].  At the change of plea hearing, the defendant acknowledged that he had read and signed his plea

agreement. [Ex. 12 to defendant's motion to vacate, p. 11.] The Court

summarized the agreement, including stating that the basic bargain included a

waiver of the defendant's right to collaterally attack his conviction and sentence.

[Id., p. 13.] The defendant further acknowledged that he was aware that the right

to collaterally attack his sentence was an important right that he was giving up.

[Id., p. 17.]

Moreover, even though the defendant alleges ineffective assistance of

counsel, the defendant either knew or should have known the facts that formed the

basis of that claim at the time his sentence was imposed. Thus, the waivers in his

plea agreement foreclose these arguments. For example, the defendant's claim of

ineffective assistance of counsel relating to his competency was painstakingly

litigated. There simply was no merit to the claim. Because it was known before

sentencing, as well as fully litigated, the defendant's waiver of collateral attack

bars this argument.

Similarly foreclosed by waiver is the defendant's now oft-rejected theory

that sentencing enhancements must be presented to the jury and proven beyond a

reasonable doubt. This too was argued by the defendant's attorneys prior to

sentencing, and properly rejected by the Court. See, Defendant's Memorandum of

Points and Authorities in Support of Defendant's Sentencing Motion S-2, filed on

April 20, 2007, pp. 8-12.  Thus, the defendant's collateral attack waiver bars re-litigation of this theory, which, as set forth below, is specious in any event.

## III.   BOEHM'S CLAIMS REGARDING THE BURDEN OF PROOF AT THE SENTENCING HEARING LACK SUBSTANTIVE MERIT.

Even if the court were to find that the defendant's claims somehow were not barred by the waiver, it would find that such claims are without legal basis in any event.  First of all, allegations of errors in the application of sentencing guidelines, when not directly appealed, are generally not reviewable in a section 2255 petition.  United States v. Schlesinger, 49 F.3d 483, 485 (9th Cir. 1994).  Regardless, the Ninth Circuit has spoken clearly on this matter:  "We have held that following United States v. Booker, district courts should resolve factual disputes at sentencing by applying a preponderance of the evidence standard."  United States v. Kilby, 443 F.3d 1135, 1140 (9th Cir. 2006).  Here, the district court did exactly that.  That standard comports with the plea agreement Boehm signed.  The plea agreement noted that, "the defendant, by entering this plea, waives the right to have his role adjustment in the offense either (1) charged in the indictment, (2) proven to a jury, or (3) proven beyond a reasonable doubt."  [Ex. 11 to defendant's motion to vacate, p.  9.]  The plea agreement alone, which

Boehm entered into knowingly and voluntarily, clearly waives Boehm's right to have his role in his crime found by a jury.

Boehm also implies that the standard of proof used at sentencing did not comply with the Sixth Amendment. However, the standard of proof used to resolve sentencing disputes, as <u>Kilby</u> notes, is entirely consistent with the Supreme Court's Sixth Amendment jurisprudence. <u>Id.</u> "This Court's Sixth Amendment cases do not automatically forbid a sentencing court to take into account factual matters not determined by a jury and to increase the sentence in consequence." <u>Rita v. United States</u>, 127 S. Ct 2456, 2465 (2007). "The Sixth Amendment question, the Court has said, is whether the law *forbids* a judge to increase a defendant's sentence *unless* the judge finds facts that the jury did not find (and the offender did not concede)." <u>Id</u>. at 2466 (emphasis in original).

Applying the United States Sentencing Guidelines to the case, the district court found, by a preponderance of the evidence, that the crimes to which Boehm pleaded guilty carried with them a total offense level of 33, suggesting imprisonment of between 135 and 168 months. In accord with the plea agreement he signed and the sentencing guidelines, and after considering both the relevance of <u>United States v. Booker</u> and the factors listed in 18 U.S.C. § 3553(a), the court sentenced Boehm to 135 months in prison. This sentence was both at the bottom

end of the guidelines and only one year and three months above the minimum

sentence required by 21 U.S.C. § 841(b)(1)(A).  As the Supreme Court noted in

Booker, "when a trial judge exercises his discretion to seek a sentence within a

defined range, the defendant has no right to a jury determination of the facts that

the judge deems relevant."  Booker, 543 U.S. at 233.  Thus, notwithstanding his

waiver, Boehm had no right to a jury determination regarding the facts used to

determine his sentence.

## IV.    NO HEARING IS REQUIRED TO DISPOSE OF BOEHM'S CLAIMS.

Because "the motion and the files and records of the case conclusively show

that the prisoner is entitled to no relief," no hearing is required on Boehm's

petition.  28 U.S.C. § 2255.  To summarize, Boehm's claim that he was not

competent to enter a knowing and voluntary plea was fully litigated and decided

during the proceedings at the district court.  As such, Boehm is barred from

collaterally attacking this claim pursuant to the Ninth Circuit's decision in

Hanson, 406 F.2d 199.  Moreover, the record of the competency hearing, coupled

with the fact that no defense expert found Boehm not competent, conclusively

establish Boehm's competency.

Next, the record of the Rule 11 colloquy with Boehm is detailed and

complete.  Every single requirement of Rule 11 was fulfilled, establishing a

knowing and voluntary guilty plea. Therefore, the collateral attack waivers contained in the plea agreement bar Boehm's substantive claims. Finally, Boehm did not receive ineffective assistance of counsel, as Boehm himself stated under oath that he was satisfied with his attorneys' representation. Moreover, the records in this case conclusively establish that Boehm's four experienced, privately retained attorneys did everything they could to assail the government's evidence, filing hundreds of requests for relief, and having Boehm examined by six doctors. Many of Boehm's claims regarding his attorneys' performance are flatly contradicted by the record (i.e., contrary to the current allegations, the district court did not preclude a diminished capacity defense; also, Vince Bloomfield was interviewed by the same investigator that is currently assisting Boehm in his civil lawsuit). To the extent they are not contradicted, Boehm fails to allege any facts which, even if proven true, would entitle him to relief. Accordingly, the defendant's motion should be denied without a hearing. <u>United States v. Mullen</u>, 96 F.3d 1155, 1159 (9thCir. 1996). <u>See also, Ortiz v. Stewart</u>, 149 F.3d 923, 934 (9th Cir. 1998).

## <u>CONCLUSION</u>

Boehm does not dispute the fact that he committed the instant offenses. Instead, in an attempt to evade his collateral attack waiver, he seeks to re-litigate

issues that were decided by the district court.  For the reasons stated above, the

defendant has waived his right to collaterally attack his sentence as his claims

were either fully litigated previously and found to be without merit, or should have

been known to him at the time the Court imposed sentence.  Even if the Court

reaches the merits, however, no evidentiary hearing is needed because no factual

issues exist which, if resolved in defendant's favor, would warrant relief.  The

record is abundantly clear that Boehm was competent and well-represented when

he read the plea agreement, signed it, and initialed every page.  He received the

benefit of his bargain when he was sentenced to 135-months, and he should be

bound by the waiver he signed.   Therefore, his motion to vacate his sentence filed

pursuant to 28 U.S.C. § 2255 should be denied without further hearing.

RESPECTFULLY SUBMITTED this 5th day of September, 2007, in

Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/ Frank V. Russo
Assistant U. S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: Frank.Russo@usdoj.gov

Certificate of Service
I declare under penalty of perjury that a true
and correct copy of the foregoing was sent to
the following counsel of record on September 5, 2007,
via:

      (X) Electronic filing

David E. Kenner, Esq.
310 K Street, Suite 400
16000 Ventura Blvd
Penthouse 1208
Encino, CA 91436


Executed at Anchorage, Alaska, on September 5, 2007.

Danielle Newberry
Legal Secretary
Office of the U.S. Attorney