```
KENNER LAW FIRM, P.C.
David E. Kenner, SBN 41425
Brett A. Greenfield, SBN 217343
16000 Ventura Boulevard, PH 1208
Encino, CA 91364
818 995 1195
818 475 5369 – fax
```

Attorney for Plaintiff Josef F. Boehm

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| Josef Franz Boehm, | ) REPLY TO THE GOVERNMENT'S |
| | ) OPPOSITION TO BOEHM'S MOTION TO |
| Plaintiff, | ) VACATE SENTENCE UNDER 28 U.S.C |
| | ) §2255 |
| v. | ) |
| United States of America | ) |
| Defendants. | ) |
| | ) CASE NO.: A04-003-01-CR(JWS) |
| | ) |

**REPLY TO THE GOVERNMENT'S OPPOSITION TO**

**BOEHM'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C §2255**

COMES NOW, JOSEF FRANZ BOEHM, by and through undersigned counsel, and hereby files his Reply to Opposition to Motion to Vacate Sentence Under 28 U.S.C. §2255.

**INTRODUCTION**

The Government has filed a lengthy response to Defendant Boehm's Motion to Collaterally Attack his Conviction and Sentence

1

Pursuant to 28 U.S.C. § 2255.  It is of some interest to note that despite its length the Government's response fails in sufficient part to address the majority of the issues set forth in the motion and memorandum.  In fact, almost fifty percent of the Government's response was the superfluous regurgitation of the underlying facts of the charged criminal offense.  While these facts are interesting they certainly shed no light on whether Defendant was competent to stand trial, enter a plea or understand the difference between his waivers in the written agreement and the plea colloquy.

In this reply we will try to address those issues addressed by the Government.

**I.   Defendant Boehm's appeal waiver, even if knowing and voluntary, does not preclude the filing of this § 2255 Motion.**

The Government in its response does not dispute that Defendant has a right to file a § 2255 and that such motion was in fact timely filed.

**II.  Defendant's Boehm's guilty plea was not knowing or voluntary as Defendant's Mental Defects Precluded him from making an intelligent waiver of his rights.**

The Government contends that Defendant Boehm was in fact competent to waive his rights and enter a plea.  In support of its opinion that Boehm was competent to enter into a knowing, voluntary and intelligent plea, the Government relies on the testimony and reports of Dr. Hope, a government psychologist, and the opinion of

2

the 9th Circuit in Hanson v. United States, 406 F.2d 199 (9th cir. 1969).

In Hanson, the District Court denied a Defendant's Motion to Vacate Sentence on grounds that the accused had been afforded <u>two</u> separate hearings to determine his competency to stand trial. Id. (emphasis added). Hanson had sought a psychiatric examination pursuant to 18 U.S.C. §4244, and was found mentally ill, but not legally insane and thus able to aid in his own defense. Subsequently, Hanson entered a plea of guilty. Id., at 200. Immediately following the plea, defense counsel filed a second motion for a psychiatric evaluation, and the Court appointed two psychiatrists. One was the same doctor who rendered the initial evaluation, and the second was an independent doctor with no prior experience in the case. The reports were in direct conflict. The first report indicated defendant could aid in his defense while the other declared defendant legally insane. After the second competency hearing, the Court concluded that the defendant was in fact competent to stand trial[1]. Id., at 201. The Court held;

> "...in those jurisdictions where the matter has been decided, no such collateral attack on the sentence is **usually** permitted where the issue of competency was heard and determined in the trial court under the provisions of sec. 4244". Id., at 202. (emphasis added).

---

[1] The Court in Hanson when presented with further information, the new psychiatric report, at least held another hearing. In this case even after the Court received the additional reports and test results, no further consideration was given to competency.

3

**REPLY TO THE GOVERNMENT'S OPPOSITION TO BOEHM'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C §2255**

The Court further opined:

> "The issue of competency to stand trial is reviewable by collateral attack under section 2255. That section requires the court to hear and determine the issue and make findings of fact and conclusions of law in respect thereto **unless** the motion, files and record conclusively show the prisoner is entitled to no relief." Id. at 203. (emphasis added).

Thus, absent "unusual circumstances" a section 2255 collateral attack on competency will not ordinarily be permitted Id.  This certainly did not foreclose the attack made in the pending motion. The instant case clearly establishes unusual circumstances regarding Defendant's mental state and ability to aid in his own defense or enter a knowing plea. [2] At the competency hearing on November 17, 2004, the Court heard only the testimony of Dr. Hope, a government psychologist.[3]

The Government relies heavily on Dr. Hope's observation, that since Defendant took several breaks during her evaluation of him to consult with his attorney's that: "*clearly we're looking at is he*

---

[2] The court itself made the following comment during the plea colloquy: "*Although I do not have any reason to believe it's true, it's a question I always ask: have you ever been treated for a mental illness?*"

[3] The failure by defense lawyers to call their experts is one of the areas of ineffective assistance that Defendant will raise if this Court were to grant only the portion of this motion dealing with the partial waiver of collateral attack.

4

**REPLY TO THE GOVERNMENT'S OPPOSITION TO BOEHM'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C §2255**

*able to understand his charges and is he able to communicate with his attorney. To me, that was **significant** evidence he was able to work with his attorneys.* (Competency Hearing pg. 17). (emphasis added). It should be noted that, Dr. Hope did not retain a single note to document her visits with Defendant, and she guessed that she met with him for "maybe" seven hours over a three day period. (Id. , at pg. 34). Notwithstanding the fact that these "interruptions" were due to previously scheduled attorney meetings with the Defendant and his attorney and that the Court knew Defendant was represented by counsel. Defendant was apparently interviewing a new attorney according to the Government's expert. (Id., at pg.17).  Inexplicably, Dr. Hope jumps to the conclusion that these meetings constitute **significant evidence** and that Defendant was capable to "work" with his attorneys. (Id.)  In fact, these "consultations" may have actually established the opposite. Meetings with counsel reflect just that, that the Defendant and counsel are having some discourse.  Dr. Hope was not privy to that discourse, had no knowledge of whether Defendant and counsel were having meaningful productive meetings, or that Defendant was understanding and appreciating what counsel was advising.  If Defendant was having a conversation and not appreciating its impact when it shows nothing at all.  Thus the centerpiece of her rationale for Defendant's competence was at best a chimera with no real import.

    The Government further argues that all evidence pointed to Defendant's competency. The record reveals otherwise. In fact, Dr.

Hope, a psychologist is the only person who deemed Defendant competent. Defense counsel submitted a group of mental health professionals who examined Defendant. Their conclusions were consistent. They found Defendant suffered from organic brain damage and his ability to function and comprehend were severely impaired. The Government does not effectively dispute the following facts concerning the medical testimony.

A)   Specifically, Gary A. Jacobson, M.D., made the following findings:

    1) Defendant Boehm has the disease of substance dependence.

    2) Based on a combination of factors including episodes of head trauma, normal aging, hypertension, a 30 year history of alcohol abuse, a 20 year history of cocaine abuse, a 7 year history of crack cocaine abuse, it is "...medically probable that Mr. Boehm had experienced some degree of brain damage before and/or during that period..."

    3) "He demonstrated an overall paranoid ideation about many events In the past. <u>He demonstrated an unusual pattern of thinking with loose associations and tangential thinking.</u> He repeatedly described possible disturbances in the contents of his beliefs to include descriptions of others consistent with fixed delusions (emphasis ours)."

B)   Dr. Jacobson reached the following conclusion;

> "Mr. Boehm is at high risk to have experienced some type of permanent brain damage related to

6

**REPLY TO THE GOVERNMENT'S OPPOSITION TO BOEHM'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C §2255**

        the events preceding and subsequent to his heavy use of crack cocaine."

C) After the Court declared Defendant "competent" to stand trial, it ordered further objective testing.[4] Dr. Arthur Kowell, M.D. made the following report concerning the CT scan of the brain, the MRI, the FDG Pet scan, the Cartoid dub lex ultrasound and the Caretea Spect:

> "The results . . . are compatible with cerebral ischemic primarily within the distribution of the middle cerebral arteier bilaterally affecting the front operational regions and anterior deep periventricular white matter bilaterally.... the ischemic changes of the brain discussed about could result in a dysfunction of the front oparietial regions bilaterally and deep periventricular white matter bilaterally."

D) Deborah Ely Budding found Defendant's initial encoding of

---

[4] Inexplicably in the transcript of the competency hearing, the Judge ordered all tests to occur on one day at one facility with no follow up. He further forbade the retention of additional experts to evaluate. The Judge made clear that he was impatient with Defendant and his counsel and that he was anxious to put the entire case to rest. As a result, Defendant's competence was never appropriately evaluated.

**REPLY TO THE GOVERNMENT'S OPPOSITION TO BOEHM'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C §2255**

information limited. Dr. Budding concluded from this that "the amount of information he is able to take in at any one time can vary from moment to moment . . . people with limited and variable initial encoding can often experience . . . difficulties based on a tendency to miss important parts of conversations and thus acting on incomplete information." This observation coupled with the results of her extensive testing led Dr. Budding to reach the following conclusions:

1) Boehm presents overall diffuse and rather subtle deficits and presents with symptoms consistent with a cognitive disorder NOS.

2) Boehm's executive function was in particular poor, especially in the area of planning and problem solving as well as working memory.

3) While able to work well with simple information but encounters significant problems when required to perform multiple tasks or work with abstract information.

Even the Government's expert, Dr. Hope was forced to admit that Defendant suffered repeat episodes of insufficient blood supply to the brain which places a person at high risk of stroke. (Competency Hearing, Pg.39). Dr. Hope conceded Defendant may have suffered brain damage and acknowledged potential brain lesions which are the result of a reduction in oxygen to the brain, and can be organic brain damage. (Id. at 41). Dr. Hope also acknowledged that organic brain damage may be demonstrated by

8

**REPLY TO THE GOVERNMENT'S OPPOSITION TO BOEHM'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C §2255**

certain medical testing, such as a CAT Scan.(Id., at 60). At the conclusion of the competency hearing the Court found Defendant suffered from a cognitive disorder NOS, as indicated by defense experts and acknowledged by Dr. Hope. Despite this evidence, the court allowed Defendant to plead guilty immediately following these medical findings.

    The Court did order the Defendant to be transported for a CAT Scan and similar tests, all of which took place after the plea. The court also ordered these tests be reported by an approved expert. The reports from Dr. Kowell, who was the approved expert, indicated a lack of competence and mental deficits of Defendant, and this report was submitted to the Court. Instead of conducting another competency evaluation; like the court in Hanson, the Court allowed the Defendant, who with the "assistance"of his counsel, had signed a 34 page plea agreement to be sentenced without ever acknowledging the potential plea defect. In fact, despite having held the competency hearing days earlier, the Court proceeded to pay no care whatsoever to Defendant's acknowledged deficits.[5]

---

[5] Arguably, it seems that the Court would have been more responsible had it delayed the plea pending the tests it had just ordered. Though it appears the court only ordered these tests in anticipation of being overruled by the 9th Circuit. Apparently, the court wished to avoid a lengthy trial. The Court stated:

    *I reached decisions and issued orders in which I have concluded that Boehm's own delay in seeking testing such as CAT scans and so on forecloses his ability to obtain that kind of*

Despite evidence produced by Defendants experts, significant poetions of which was conceded to by the government expert, no further hearing on Defendant's competency was held.

The Government also seeks to distinguish the defendant in <u>Timbana</u> from the instant case. Defendant concedes that in <u>United States v. Timbana</u>, 222 F.3d 688 (9th Cir 2000), the Defendant suffered more severe handicaps then Defendant Boehm. However, the competency issue remains the same and the same standard applies. The Government argues that the Court conducted a textbook Rule 11 inquiry, including advising the Defendant of his basic rights. (Government's Opposition page30). Indeed, the court did only that, advise Defendant of his *basic rights*. Unfortunately for Defendant,

---

*testing. I remain confident about the accuracy of my ruling. However, I am cognizant that a panel of the Ninth Circuit might disagree. If that were to happen, we might face the prospect of another lengthy trial and, importantly in this case, it would be a trial in which children would be required to come back and effectively relive their nightmare for a third time, that being-the first time being when it happens, the second time being the first trial and the third time being the second trial. These are extremely weighty issues and I don't get reversed any more than any other judge.*

From these statements, it can be inferred that the Court already deemed Defendant guilty, and ordered additional testing to avoid being overruled. Notwithstanding, the court went forward with Defendant's plea's while awaiting the test results.

10

**REPLY TO THE GOVERNMENT'S OPPOSITION TO BOEHM'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C §2255**

there was no inquiry into whether it was a knowingly, intelligent and voluntary waiver.

> "The purpose of a knowing and voluntary inquiry is to determine whether the defendant actually does understand the significance and consequences of a particular decision." <u>Comer v. Schiro</u>, 480 F.3d 960 (9th Cir. 2007).

There was no effort to make that determination here despite the Court's knowledge of the pending neurological testing. In fact, while the court did not find Defendant suffered from dementia, it did find that Defendant suffered from a cognitive disorder NOS. Upon making this finding, the Defendants competency should again have been addressed but neither counsel nor the court did so.

An important concession in <u>Timbana</u>, was that an otherwise adequate Rule 11 colloquy must be broadened under circumstances where, as here, the Court and counsel were aware of a Defendant's mental defects. The Court said:

> "The principle announced by our sister circuits . . . is that where a district court is made aware during a Rule 11 proceeding that a Defendant's competency to enter a plea may be impaired it must conduct an inquiry before accepting a guilty plea . . . Our decision today does not put the Ninth Circuit at odds with seven other Circuits." <u>Id</u>.

The colloquy was nothing more than a mere cursory explanation.

11

The government cites nothing to prove the colloquy resulted in a knowingly, voluntary and intelligent plea. Therefore based upon the unique circumstances of this case as well as the settled law in this Circuit, it is clear that Defendant Boehm did not knowingly and intelligently waive his right in his plea. The failures to inform set forth in the initial motion were unresponded to. Absent the knowing and intelligent waiver, the plea must be vacated.

**III. The Waivers of the Right to Collateral Relief and Appeal were not Free, Voluntary and Intelligent.**

The Government claims that since Defendant had four experienced criminal defense attorneys who filed numerous motions, that he was not denied effective assistance of counsel. This statement is disingenuous at best. The very same attorneys declared the following in Defendant's plea agreement.

> "As counsel for the Defendant we have discussed with him the term of this plea agreement, have fully explained the charge to which he is pleading guilty and the necessary elements, all possible defenses and the consequences of his plea. Based on these discussions, we have no reason to doubt that the Defendant is knowingly and voluntarily entering a plea of guilty. <u>We know of no reason to question his competency to make these decisions</u>. If prior to the imposition of sentence, we become aware of any reason to question Defendant's competency to

12

        enter into this plea agreement or to enter a
        plea of guilty, we will immediately inform the
        Court." (emphasis added).

Defense counsel made this declaration despite having, just two days prior, urged the court to declare Defendant incompetent and at a time all were aware further testing had been ordered.[6] The Government also insinuates that Defendant's Motion to Vacate Plea fails to make specific allegations about the content of proposed testimony urging that Defendant must make such a showing to demonstrate prejudice, citing <u>United States v. Dalton</u>, 785 F. Supp. 126,128 (D. Montana 1990). This is not true. Given that the plea allows a collateral attack only "based on information not now known to the Defendant, which in the exercise of reasonable diligence could not be known by him at the time the court imposes sentence...". The prejudice is the failure to be able to assert matters which were known to counsel and not acted upon.  At no time did Defendant Boehm ever desire to give up his right to challenge the inept ineffective representation he was given.[7]  Discovery is on-going in a civil action brought against Defendant by the alleged minor victims in the criminal case.  Counsel therein has developed new evidence during this investigation. As such, specific individuals

---

[6] Testing that they themselves had requested because of their concerns about their own client's competence.

[7] In the competency hearing itself, the Court based portions of its rulings based upon missed deadlines and dropped motions by this group of "experienced" defense lawyers.

13

**REPLY TO THE GOVERNMENT'S OPPOSITION TO BOEHM'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C §2255**

and proposed testimony was presented in great detail in Defendant's initial Motion to Vacate, specifically on page 28-29.

This goes to the general right to maintain unlimited collateral relief. However, the structure in the plea agreement presently forecloses same. As a result, Defendant indicated in the initial motion that the Courts Rule 11 colloquy made no inquiry in to restricting any part of Defendant's right to collateral relief. Notwithstanding, the Government fails to address the conflict between the plea agreement and the colloquy as aforesaid. Defendant in his initial Motion to Vacate, clearly established that where there is a conflict between the agreement and the colloquy, the waiver can only be the one the Court questions upon and approve. In <u>United States v. Buchanan</u>, 59 F3d 914 (9th Cir. 1995), the Ninth Circuit of Appeals held that any ambiguity arising in a Rule 11 colloquy would foreclose the findings of a knowing and intelligent waiver of rights. This is the case where a specific right is allegedly waived in the actual plea agreement. The plea colloquy in the instant case informed the Defendant as follows:

COURT: "Finally, you agree to waive your right to appeal your sentence and your right to collaterally attack your conviction on any grounds except your plea is not voluntary <u>or that you did not have effective assistance of counsel</u> (emphasis ours) . . . Have I - have we correctly summarized the plea agreement as you understand it Mr. Boehm?

BOEHM: Yes, Yes"

14

**REPLY TO THE GOVERNMENT'S OPPOSITION TO BOEHM'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C §2255**

Therefore, as Boehm, on the record understood, he had an unrestricted right to a collateral attack on ineffective assistance of counsel. That is what the Court queried him on and that is what he understood. Moreover, the Supreme Court in <u>Godinez v. Morgan</u>, 509 U.S. 389 113 S.CT. 2680 (1993), provided the following to determine competence to plea over competence to stand trial:

> "A finding that a Defendant is competent to stand trial, however, is not all that is necessary before he may be permitted to plead guilty or waive his right to counsel. In addition to determining that a Defendant seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself the waiver of his constitutional right is knowing and voluntary."

Here Defendant was told by the Court without qualification that he could attack collaterally the ineffectiveness of his lawyers. The Government seeks to limit that right which Defendant indicated he was not waiving. This Court must opine that Defendant has the unrestricted right and allow him to raise all grounds therefore.

As mentioned above, the plea colloquy was devoid of any inquiry of whether Defendant understood the significance and consequences of his plea and plea agreement, and therefore not a free, voluntary or intelligent waiver.

15

**REPLY TO THE GOVERNMENT'S OPPOSITION TO BOEHM'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C §2255**

### IV.  Burden Proof at Sentencing

The Court then made findings based on a preponderance of the evidence that Defendant Boehm was a leader, organizer and not entitled to the safety valve. The Court did so knowing full well that this finding would exceed the Defendant's maximum sentence based on a fact not admitted by him or found by a jury. The court found that during lucid periods between 2001 and 2003 Defendant was an organizer and leader. This is in conflict with the Supreme Court's decision on enhanced sentence. <u>Almendariz-Torres v. United States</u>, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed 2d 350 (1998), the Court held in <u>Apprendi</u>, "any fact that would increase the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

In <u>Blakley v. Washington</u>, 124 S. Ct 2531 (2004), Justice Scalia writing for a majority of the Court, clarified how <u>Apprendi</u>, supra should apply at sentencing;

> "The statutory maximum for Apprendi purposes is the maximum sentence a Judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the Defendant. . . In other words the relevant statutory maximum sentence a Judge may impose after finding additional facts, but the maximum he may impose without any additional findings..."

Since Defendant received the leadership enhancement, he did not qualify for the safety value. Counsel informed Defendant he

16

**REPLY TO THE GOVERNMENT'S OPPOSITION TO BOEHM'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C §2255**

likely would obtain the benefit of the safety value which would significantly reduce his sentence range. In effect Defendant's enhanced leadership role was an impermissible sentence increase. For reasons set out above, Defendant never knowingly, voluntarily or intelligently waived his right to have his role in the alleged crimes found by a jury.

**V.   Hearing on Motion to Vacate**

Based on the foregoing arguments, Defendant respectfully requests this court vacate his sentence or alternatively grant a hearing on his Motion to Vacate, Set Aside or Correct Sentence.

DATED this 25 day of October, 2007 at Encino, California.

                KENNER LAW FIRM, APC

                BY: /s/ DAVID E. KENNER

                David E. Kenner
                California 41425
                16000 Ventura Blvd.
                Penthouse 1208
                Encino, California 91436
                Telephone: (818) 995-1195

**REPLY TO THE GOVERNMENT'S OPPOSITION TO BOEHM'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C §2255**